# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Rodney L. Marshall, | Case No. 2:21-cv-00726-JAD-BNW |
| Plaintiff, | **ORDER re ECF No. 20** |
| v. | |
| State of Nevada, et al., | |
| Defendants. | |

Presently before the Court is *pro se* Plaintiff Rodney L. Marshall's motion for appointment of counsel (ECF No. 20), filed on September 1, 2021.[1] Although Mr. Marshall used a form designed for appointment of counsel in *habeas corpus* cases, the Court will construe the motion as a motion for appointment of counsel in his Section 1983 case. *See* ECF No. 20 at 1–3.

Defendants did not file an opposition. The Court attempted to hold a hearing on October 20, 2021, but was unable to reach Mr. Marshall or anyone at Southern Desert Correctional Center. *See* ECF No. 30.

**I. Background**

Mr. Marshall's complaint alleges violations of the Eighth Amendment. ECF No. 1-1 at 3–4. As his complaint indicates, Defendants—various personnel associated with the Nevada Department of Corrections (NDOC)—knew as early as April 2020 of Mr. Marshall's prostate cancer diagnosis but did not inform Mr. Marshall of this diagnosis until October 2020. *Id*. at 4. According to Mr. Marshall, NDOC personnel learned of his prostate cancer diagnosis when they received the results of a biopsy that was completed in March 2020. *Id*.

---

[1] Mr. Marshall previously filed a motion for appointment of counsel about a week after initiating this case. *See* ECF Nos. 1, 3. The District Judge on this case denied that motion without prejudice, reasoning that Mr. Marshall's deliberate indifference claim is one that is commonly filed by those in custody and, thus, not exceptional. ECF No. 7 at 7. Judge Dorsey also noted that it was unclear, "at t[hat] very early stage of proceedings," whether Mr. Marshall "has a likelihood of success." *Id*. She further found that, at that point, Mr. Marshall was "able to articulate his claims at least as well as the average pro se civil-rights litigant." *Id*. at 8.

Mr. Marshall further alleges that NDOC personnel have failed to provide him with proper follow-up care since they learned of his diagnosis. More specifically, he alleges that he did not receive a consultation for his prostate cancer until March 8, 2021—nearly a year after Defendants first learned of his diagnosis. *Id*. This delay allegedly occurred despite Mr. Marshall submitting multiple inmate requests, filing grievances, and having discussions with medical staff at High Desert State Prison, where he was in custody.[2] *Id*. at 4–5. Of note, even after finally receiving a consultation, Mr. Marshall alleges that this consultation was with a physician (Dr. Abbott) who was not the one who had diagnosed him with prostate cancer and that this new physician did not have the records from the diagnosing doctor (Dr. Ludlow). *Id*. at 4–5. The new physician—Dr. Abbott—allegedly ordered a new biopsy, which, as of May 3, 2021 (i.e., when the complaint was filed), had still not been completed. *Id.* at 5. Dr. Abbott also allegedly shared with Mr. Marshall that the "cancer will not go away on its own, could spread, and if not treated in a prompt and adequate manner, it could be terminal." *Id*.

Mr. Marshall now requests a court-appointed attorney, arguing that he does not have access to his medical files and, even if he did, he does not have the ability to interpret the medical records. ECF No. 20 at 4. He also argues that he needs to amend his complaint regarding the cause of action and parties but does not know how. *Id*. Mr. Marshall adds that he needs counsel to help answer specific questions relating to why there have been delays in his medical treatment and who is responsible for these delays. *Id*. Further, he notes that, on August 28, 2021, he received a second biopsy, presumably the one allegedly ordered by Dr. Abbott in March of this year, but has not received the results despite his attempts to reach out to Dr. Abbott and other medical staff. *Id*.

Defendants did not file a response supporting or opposing Mr. Marshall's instant motion.

**II. Discussion**

Civil litigants do not have a Sixth Amendment right to appointed counsel. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). In certain circumstances, federal courts are

---

[2] It appears that Mr. Marshall is currently in custody at Southern Desert Correctional Center. *See* ECF No. 28.

empowered to request an attorney to represent an indigent civil litigant. For example, courts have discretion, under 28 U.S.C. § 1915(e)(1), to "request" that an attorney represent indigent civil litigants upon a showing of "exceptional circumstances." *Agyeman v. Corrections Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004).

To determine whether the "exceptional circumstances" necessary for appointment of counsel are present, the court evaluates (1) the likelihood of plaintiff's success on the merits. and (2) the plaintiff's ability to articulate his claim *pro se* "in light of the complexity of the legal issues involved." *Agyeman*, 390 F.3d at 1103 (quoting *Wilborn v. Escalderon,* 789 F.2d 1328, 1331 (9th Cir. 1986)). A court may find that "exceptional circumstances" exist if a claim is either factually or legally complex. *See, e.g., McElyea v. Babbitt*, 833 F.2d 196, 200 n.3 (9th Cir. 1987) (per curiam) (suggesting that a plaintiff's claim concerning the provision of religious books in prison raises "complicated constitutional issues").

Neither of these factors is dispositive and both must be viewed together. *Wilborn*, 789 F.2d at 1331. It is within the court's discretion whether to request that an attorney represent an indigent civil litigant under 28 U.S.C. § 1915(e)(1). *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).

**A.  Whether Mr. Marshall's claims have a likelihood of success on the merits**

Here, Mr. Marshall's claims have a likelihood of success on the merits.

Mr. Marshall's complaint survived the screening process. ECF No. 7. In the screening order, Judge Dorsey found that he had "adequately pled" a deliberate indifference claim against two prison officials, namely the NDOC medical director Michael Meved and High Desert State Prison physician Gregory Bryant. *Id*. at 4. Although Judge Dorsey also noted that such adequate pleadings were insufficient "at t[hat] very early stage of the proceedings" to determine Mr. Marshall's likelihood of success, the Ninth Circuit "has indicated that the articulation of a cognizable claim for relief may itself be sufficient to satisfy the 'merit' analysis on a motion for appointment of counsel." *Turner v. Riaz*, No. 216CV0969MCEACP, 2018 WL 5962726, at *4 (E.D. Cal. Nov. 14, 2018) (citing *Tilei v. McGuinness*, 642 F. App'x 719, 722 (9th Cir. 2016)).

Accordingly, Mr. Marshall has presented a plausible Eighth Amendment claim.

### B. Whether Mr. Marshall has an ability to articulate his claim *pro se* "in light of the complexity of the legal issues involved

Mr. Marshall's position is that he is unable to articulate his claim *pro se* "in light of the complexity of the legal issues involved[,]" noting that he is not trained, has no help, has no law library help, and no resources. ECF No. 20 at 4. Defendants did not file a response, indicating either support or opposition for his position.

In an unpublished decision, the Ninth Circuit held that a plaintiff should be appointed counsel for a deliberate indifference claim stemming from allegations that prison supervisors and physicians failed to properly treat the plaintiff's "'chronic and substantial pain' resulting from spine degeneration[.]" *Tilei v. McGuinness*, 642 F. App'x 719, 722 (9th Cir. 2016). The Ninth Circuit reasoned that the plaintiff's "claim will turn on complex medical questions of competing treatment regimens and causation, and likely require the testimony of expert witnesses." *Id*. In another unpublished decision, the Ninth Circuit ordered appointment of counsel in a case also involving a deliberate indifference claim, holding that the claim involved "complex" medical issues relating to the defendants' alleged failure to treat plaintiff's tuberculosis. *Tai Huynh v. Callison*, 700 F. App'x 637, 638 (9th Cir. 2017). The *Tai Huynh* court reasoned that "the record demonstrates that [plaintiff] has little ability to articulate his claims without the benefit of counsel to properly challenge Defendants' expert." *Id*. (citation omitted).

Furthermore, other district courts have also found that such deliberate indifference claims are complex. *See, e.g., Turner v. Riaz*, No. 216CV0969MCEACP, 2018 WL 5962726, at *4 (E.D. Cal. Nov. 14, 2018) ("Appointment of counsel is also appropriate because deliberate indifference claims involve an interplay of factual and legal issues that is inherently complex."); *Cataldo v. Madox*, No. 16-CV-2747-JAH-WVG, 2017 WL 2733924, at *2 (S.D. Cal. June 26, 2017) ("Plaintiff's claims of deliberate indifference to medical needs and failure to protect based on medical status will turn on standards of care, causation, and medical treatment issues that may require the testimony of expert witnesses, necessitating expert discovery, a task that is undoubtedly complex."); *cf. Hernandez v. Aranas*, No. 218CV00102JADBNW, 2020 WL 569347, at *6 (D. Nev. Feb. 4, 2020) (holding that the plaintiff's deliberate indifference claim

relating to eye treatment is "relatively straightforward" and "despite [the plaintiff's] medical issues and language barrier, [the plaintiff] has sufficiently demonstrated his ability to articulate his position").

Here, Mr. Marshall requires access to his medical records,[3] an expert to interpret these records, and an expert witness to establish causation. While many *pro se* litigants would face difficulties in interpreting medical records, the ability to do so is critical in Mr. Marshall's case. This is so based on the nature of Mr. Marshall's deliberate indifference claim under the Eighth Amendment.

Additionally, there is limited evidence that Mr. Marshall possesses an ability to articulate his claims. It appears that he has been relying on other inmates to draft pleadings and motions. *See, e.g.,* ECF No. 1-1 at 9; ECF No. 3 at 4. For example, his complaint was filed on a form template and, although signed by Mr. Marshall, it included a note indicating that "Inmate law clerks" helped prepare it. ECF No. 1-1 at 9. Additionally, for the motion for appointment of counsel currently before the Court, Mr. Marshall (again) used a form template but one intended for those seeking appointment of counsel in *habeas* proceedings. *See* ECF No. 20. Furthermore, Mr. Marshall represents that he lacks access to his medical files and the ability to interpret them; he needs to amend his complaint but does not know how; and he is unable to access legal resources, including the prison law library.[4] *Id*. at 4.

Accordingly, these circumstances warrant the appointment of *pro bono* counsel in this case.

**III. Conclusion and Order**

Because the Court will exercise its discretion to appoint counsel and grant Mr. Marshall's motion for appointment of counsel, it will refer the case to the Court's Pro Bono Pilot Program to

---

[3] In his motion for a preliminary injunction, Mr. Marshall includes copies of various requests submitted to medical staff requesting the results of his March 2020 biopsy, that the results be shared with his new physician Dr. Abbott, updates regarding the biopsy Dr. Abbott ordered in March 2021, and medical treatment. *See* ECF No. 6 at 10, 12, 15, 16.

[4] The Court is particularly concerned with Mr. Marshall's inability to access his medical files and the prison law library.

attempt to find an attorney to accept Plaintiff's case. Mr. Marshall should be aware that the Court has no authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C. § 1915(d). *Mallard v. U.S. Dist. Court for Southern Dist. of Iowa*, 490 U.S. 296, 298 (1989). Rather, when a court "appoints" an attorney, it can only do so if the attorney voluntarily accepts the assignment. *Id*. **Additionally, Mr. Marshall is reminded that until counsel is appointed, he is still responsible for complying with all deadlines in his case.** If counsel is found, an order appointing counsel will be issued by the Court and Mr. Marshall will be contacted by counsel.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Appointment of Counsel (ECF No. 20) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is referred to the Pilot Pro Bono Program adopted in General Order 2019-07 to identify an attorney willing to be appointed as a *pro bono* attorney for Plaintiff. Plaintiff is reminded that he must comply with all deadlines currently set in his case and there is no guarantee that counsel will be appointed. If counsel is found, an order appointing counsel will be issued by the Court, and Plaintiff will be contacted by counsel.

**IT IS FURTHER ORDERED** that the Clerk of Court must forward this Order to the Pro Bono Liaison.

DATED: October 29, 2021.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE